22-1659. Council, whenever you're ready. Thank you, Your Honor. Good morning, and may it please the Court. David Zients on behalf of Bacardi. Congress enacted mandatory requirements for renewing a trademark registration and did not grant the PTO authority to waive those awarding a renewal, even though the statutory requirements were not met within the statutory timeframe. The question on this appeal is whether that claim is reviewable. Consistent with a strong presumption favoring judicial review, the answer is yes. The parties now agree that nothing in the Lanham Act expressly precludes judicial review. There is also no clear and convincing indication in the structure of the statute that preclusion must be implied. Further, in addition to its APA cause of action, Bacardi asserts a non-statutory cause of action challenging the PTO's action here as ultra-virus, and the PTO does not defend the district court's sole ground for dismissing that claim. For these reasons, the district court's decision should be reversed, and Bacardi should have an opportunity to present its claim on the merits. Your Honor, if I could begin with the structural issue, because I think that is the heart of what the PTO is now arguing on appeal, this idea that you imply preclusion here from structure. The key question here in light of the strong presumption favoring review is not whether an inference could be drawn, even a reasonable or plausible inference could be drawn from the structure of the statute saying that this renewal action was meant to be outside of judicial review. It's the opposite. That needs to be the only possible reasonable inference. If there is another inference out there, at least a reasonable one, that review has not precluded, then the presumption prevails. What I would submit there is at least, in my view it's the best inference, but certainly a reasonable inference that an agency action unlawfully renewing a trademark registration simply falls outside of the cancellation mechanism that is for other issues. This may be a little far afield, but do we think about this sort of implied preclusion differently, and if so, how, from implied preemption? I mean, they seem to have sort of overlapping ideas, but the court doesn't seem to talk about them in precisely the same way. Do you have thoughts about whether those are different, and if so, why? Sure. I think it is a bit different. Applied preemption often comes in the context where you can't comply with federal law and state law at the same time, so one of them has to give way, and that's going to be state law rather than federal law. It sort of claims the field, right? We think about implied preemption, too, where federal law claims the field, and that feels a lot like what we're talking about here, that you might find preclusion in a scenario where the structure sort of claims the field, right? Right. But, Your Honor, I think if we're following that analogy, the Supreme Court in recent years has really strongly disfavored this idea of claims the field preemption. You really have to find it's basically impossible to comply with both in the preemption space, and there's a strong, you know, another analogy there, there's a strong presumption against preemption in those implied preemption cases. So I think it's That's sort of what I'm getting at, right, is that, and this is helping you, not hurting you, right? So, but the point is, is the Supreme Court has suggested in this, in the preemption context that maybe there's this narrow window that's available here, but it's a really narrow window, maybe just a theoretical one, and why wouldn't we think the same thing in the idea of implied preclusion? Yeah, I think that analogy is a good one in the sense that, you know, I'm not shocked that you think it's a good one. I've learned not to, I've learned to recognize a friendly question. You know, I think that, I think that, you know, there's very similar principles in terms of a strong preemption. When you look at the preclusion cases, there's a very similar idea that it's narrow. The case that we discussed in both briefs is the Block case, and I think the really important lesson from that decision and some of the circuit court decisions that have followed, you can't imply preclusion just because, you know, there is a remedy in certain circumstances, it comes with limits, this falls outside the limits, so Congress must have intended that this other action must be not reviewable. In Block, you had this really intricate scheme that essentially would have become nonsensical if you had the particular type of review it issues. You had the milk handlers, the milk producers, and the milk consumers, and the handlers and the consumers were basically hand in glove with the same interest, and Congress said for the handlers, you have to go through this intricate administrative scheme, and only after that can you seek judicial review, and the consumers who like, you know, handlers make, if they consume milk, they could be a consumer too, could basically just circumvent that entire process, challenge the exact same agency action, and that's what Congress, excuse me, the Supreme Court said, you know, that sort of the only way to read this statute is that it precludes that type of review, but notably, the D.C. Circuit had a case about 10, 15 years ago called Arkansas Dairy Cooperative versus Department of Agriculture. It considered the exact same statute, and instead, it looked at it from the perspective of the producers, and the producers were just kind of left outside of that statutory scheme, unlike the handlers, there was no express provision for judicial review. The D.C. Circuit there said that's different. You know, we resort to the strong presumption on review. There's no, you know, you're not aligned with anyone else who has a right to review, so you can just go in under the APA, and I think that's actually much more analogous to what we have here. If this was a cancellation, where would we be? Your Honor, if, you know, if there were a substantive challenge to the registration of the mark, then you would have a cancellation proceeding that would go before the TTAB, and then you would go under 15 U.S. Code Section 1071 to challenge that action. So I think that, you know, literally where we would be would be in the kind of action authorized by 1071 to review the TTAB cancellation proceeding. Is there any court that has talked about setting aside a registration renewal as an action separate from a cancellation? Your Honor, I don't think this has come up one way or the other for the simple reason that If it hasn't come up, what do you mean one way or the other? Well, what I mean is that we do have actions, you know, on the other side where the PTO has followed the law and, you know, refused to renew a registration when the statutory requirements for doing so were not met. But you're making a distinction here that I haven't seen anywhere else, and that's what I'm trying to get at. Your Honor, you know, I agree this is not a distinction that you'll find in a case. Just I think that the way Congress structured the statute is that it was supposed to be automatic. You know, when Congress and other parts of the statutory text talks about the word cancellation, with respect to renewal, Section 1058 just says a registration lasts for 10 years, and then Section 1059 imposes the requirements. They're not particularly difficult requirements, but, you know, courts for decades have said this is not discretionary, this is not technical. If these requirements aren't met, the PTO has no authority to extend the statutory requirements or deadlines. So it's just a different action. And I think we, again, we sort of fall back to this strong presumption of review. It's just a matter of silence. It is not specifically addressed. There's good reason that this wasn't addressed as a matter of cancellation, precisely because it's supposed to be automatic. It just expires. That's what the statute indicates, that the regulation is expressed, that when the statutory requirements for renewal aren't met, the registration expires, and that's just that. What, if anything, should we make of the fact that 1071 specifically lists applicants for renewal, a dissatisfied applicant for renewal among the parties who can bring an action? Your Honor, I think that is the exact type of circumstance that's covered by these Supreme Court decisions. It says the fact that you have an express remedy for one, you know, one circumstance, one party, is not enough to support implied preclusion. I think it's the exact, it's actually basically exactly like the D.C. Circuit, you know, Arkansas dairy cooperative case that I mentioned earlier. There you have that milk statute, which has an express, you know, route for appeal for the handlers, but it just leaves the producers out of it, and the D.C. Circuit says the producers go under the APA. So 1071, it lists the applicants for renewal in kind of a list of parties to the proceeding in front of the agency, right, who might have been aggrieved, but you're saying that doesn't mean we should read it as an exclusive list that somehow says the APA doesn't apply. No, Your Honor, I think that would be too much to over, that's not enough to overcome the strong presumption favoring review. Now, it does mean that review is different. Section 1071 is a sort of uniquely favorable way to the challenger of seeking review. It's de novo review in the district court, can even, you know, unusually for challenging agency actions, you can put forward new evidence. So, you know, we don't get, we don't claim the benefit of that special form of judicial review under 1071, but I don't think that that supports, is the only possible inference from the statutory structure that Picardy has no ability to seek review. And again, I think, you know, what the cases also highlight is how extraordinary it is to say that a claim that an agency has exceeded its statutory authority could be totally unreviewable. That is central to the Block case that we talked about where, you know, someone who is directly aligned with the consumers there, you know, had a basis to seek judicial review. The Second Circuit in the Clapper case, you know, reads Block and notes how important it is that there was someone aligned, you know, with the party seeking review there that could pursue the exact same claim. So it really would be extraordinary, I think, to say, you know, Picardy may very well have a claim here that the agency acted outside of its statutory authority, did the direct opposite of what notice and comment regulations promulgated by the agency said it was supposed to do, and there's just no one who can challenge that agency overreach. That's the lesson of all these cases. It comes up again in these, it's in the express preclusion context, but the recent line of cases at the Supreme Court, the SAS Institute case, even where Congress, you know, has one might think you would read an express preclusion statute to preclude the types of review that were sought there, you know, the Supreme Court in recent cases has really gone out of its way to say, well, of course, when you're challenging that the agency doesn't have a basis under the statute to do what it did, shenanigans was the word, you know, that's what the APA is for, and I'd suggest that if that's how you approach it when Congress in text issues, you know, enacts a preclusion of review provision, that that principle should apply at least as forcefully in the context where we're just drawing inferences from structure or something else. Your Honor, I did want to touch briefly on the patent analogy that the government draws, and I think it's a very similar set of issues to what we talked about in terms of the Block case. You know, the lead case from the Federal Circuit that they rely on, you know, pregis, tried to bring an APA cause of action to challenge whether a patent should have been granted because it was obvious and there was prior art. Congress very meticulously addressed how courts are supposed to review exactly that issue, you know, non-obvious patents, that requirement for patentability, and that would be the sort of where it would be kind of nonsensical to have an APA cause of action where you have these administrative mechanisms to bring this exact type of challenge within BTO. Congress actually said, but, you know, a decision by the agency not to institute that type of review is non-reviewable. You could basically totally get around that and do exactly what Congress contemplated could not be done through that sort of process. So I think it's very different, and the other point I would make just to highlight about the patent analogy that the government draws, patents aren't renewable. We have those cases all involve, you know, whether a patent should be invalidated. There's a process for that exact question, you know, the statutory requirements for the validity and granting of a patent. There is no separate provision in the Patent Act saying, you know, here's the separate renewal process and here's what you have to do. Here you have really distinct statutory events in the Lanham Act. You have registration, you have the substantive requirements of registration, you have a cancellation process where a party claims that that, you know, doesn't meet those requirements. Can I just ask you, what do you make of the Bonehead Brands, the case you cite, that cancellation because of a failure to comply with 1058 is not automatic? Your Honor, I think that, I think that speaks to, you know, the Congress crafted cancellation procedures to deal with a specific set of issues, principally the substantive registrability of a trademark. Section 1058 is a bit different. It's an instruction not to institute cancellation proceedings by a party, but instead a directive to the PTO director that in certain circumstances they have to take action. But I think it just sort of confirms that you have a subset, a very large subset, of agency actions do fall within these cancellation proceedings. Another way this is unlike the Patent Act is that, you know, within five years after registration, cancellation can be sought on any ground. So I think broadly there is a policy favoring review, but it is not, it doesn't cover, you know, every single facet of the statute. Section 1058, the affidavit requirement, and then as relevant here, Section 1059, the renewal requirement, it's just not covered. You know, and it's sort of a quirk of timing in a way that it's not covered by the cancellation provision. The renewal, by definition, can't happen until 10 years or a failure to renew. And so you're sort of outside the five-year statute of limitations the day that happens. And so we're just back to the point that it would really be doing quite a lot of work and much more work than would be consistent with this presumption favoring review to say, well, because of this quirk of timing, that a renewal action just automatically just becomes non-reviewable because it's past the statute of limitations for the separate and distinct cancellation process. Thank you, Your Honors. May I please the Court, Nicholas Crown for the USPTO and Director. If I may, I'd like to start with three points which I think get to the heart of this case. The first is that the Lanham Act contains a comprehensive scheme through which a third party, like Bacardi, can challenge a registration and seek to have it removed from the books. And I want to emphasize that point because Bacardi's arguments in its brief, and I think in the remarks today, suggest that renewals somehow fall categorically outside of that comprehensive review scheme, but that's simply not the case. I think as the PTO explained to Bacardi in its inter-parties proceedings, as Bacardi is currently litigating in its pending lawsuit in the District of Columbia, there certainly is a ground for cancellation of a registration if the renewal was procured by fraud. So this notion that there's somehow a lawless zone or unreviewable conduct or that this is a gap in the statutory scheme, I think that's inaccurate. And that point undermines most of Bacardi's theory in this case. Well, they're not arguing, would you agree, they're not arguing in this case about conduct by the MARC owner, fraud. They're not arguing that the MARC itself is deficient, right? They're arguing in this suit about agency action, agency allegedly not complying with its own rules and procedures, which is what the APA is built for. Well, just to push back on that a little bit, Judge Rushing, I think in a way Bacardi is challenging the registrant's actions, because if we look at the provision of the Lanham Act that Bacardi relies on for its substantive claims here and the ultraviarious claim, it's 1059. And Section 1059 actually sets out the requirements for an applicant. It doesn't actually impose a mandatory obligation on the agency. In fact, 1059A states that any deficiencies in the application filed by the registrant can be cured. So I think that's another important point. The second point I wanted to make. Do you agree that this is not a cancellation action? They're not pointing to any deficiency with the MARC, right, and saying this should never be a trademark or it shouldn't currently be a trademark because it's not being used that way. Do you agree that this is different than a cancellation claim? No, we disagree. We think in substance, in all relevant respects, this has the hallmarks of a cancellation proceeding. And that's one of the insights the district court made here, and that's certainly... Well, it has the hallmarks. Tell me about that. The district court said this is a cancellation proceeding. It's exactly the same. But that seems debatable. I think this actually is something that Bacardi concedes in footnote 2 of the reply brief at page 10. I think the parties agree. That would be surprising, don't you think? I think the agreement, the party where they agree, and this is kind of the linchpin, I think, of the argument. We all agree if this is the type of claim, if Bacardi is seeking here to bring the type of claim that Congress intended to channel through cancellation procedures, then Bacardi would have to go through that intricate scheme. And I think here, if we take a step back and look at what the claim is, we have a third party who is challenging a registration that is currently on the books, and they want to have that registration removed from the books. That is the premise of a cancellation proceeding. That's, I think, A to Z, a cancellation. It's kind of a very high-level view. If anything that suggests this mark shouldn't still be going is a cancellation. If they are saying it should have expired and the agency acted outside of its authority, you're saying at a very, very, very high level that's saying the mark should no longer be on the books, so it's a cancellation. Well, I want to bracket the merits, and just on the point, I guess the question on altitude of how far up we're looking, I don't think so. I think either way you look at it, whether you're looking at it from 10,000 feet or zoom in on the claims here, if we look at paragraph 113, that's the prayer for relief and the complaint, they actually mirror the same type of language in the cancellation proceeding they brought precisely Judge Motz. And I think that is another important point that underscores they're really seeking the same thing here. And this is the second observation I wanted to make at the start. What Bacardi is seeking to do here with its APA and ultraviarious claim in this parallel litigation that's alongside its District of Columbia proceedings, what it's seeking to do here is far removed from any substantive interest as a third party it has. It's trying to collaterally attack the USPTO's collection of fees from another party. And that's a process in which Bacardi has no substantive or legitimate interest and certainly no statutorily prescribed role. And the third point I wanted to make is that the reason Bacardi is asking this court to recognize a freestanding claim outside of Congress's intricate scheme is because really what they have is a theory in search of a cause of action. Their concern is, well, they're foreclosed under the Lanham Act from bringing this particular theory to challenge the registration, so therefore a new cause of action has to be recognized. I think that gets it exactly backwards, as the District Court correctly found. And again, just stepping back, I want to get back... I guess the problem, though, as Judge Richardson was getting at, is it's not as though the Lanham Act is the only statute. I mean, the APA is... Congress has put both of these statutory schemes in place, and our job is to honor them both and figure out how they interact. And so the idea that we should presume because it's not in the Lanham Act, it doesn't exist, seems a bit too far. Well, I, again, want to push back a little bit on that notion. Yes, it's certainly true the APA and the Lanham Act both exist, and we can read them in harmony. But I want to get back to the standard here. What Bacardi is advocating here, I think, is actually a standard of... that has never actually been recognized by the Supreme Court. What I heard my friends say is that if there is any plausible reading of the Lanham Act to permit an APA cause of action, then the APA has to prevail. But that's actually the precise argument that the Supreme Court rejected in the same block case that Bacardi has invoked again today. There, the Supreme Court said that the clear and convincing indication standard, it's not really an evidentiary test or even clear and convincing evidence. What it means is you have to be able to fairly discern congressional intent, and you have to look at that based on the text of the statute, the structure, the legislative history, the purposes of the statute, all of those things together. And I think here, again, if we narrow in and zoom in, Judge Rushing, again, getting back to the altitude point, on what the claim actually is here, it's so ancillary, so far removed from any substantive disputes over a trademark registration's validity, that it seems perfectly reasonable. And I would say that the structure precludes this type of claim, a collateral attack on the collection of fees. And again, this is another insight in the district court's opinion, because when I went through the Article III standing analysis, it recognized correctly, and I don't hear any dispute from Bacardi on this point, certainly not in the briefs, that the basis for Article III standing that Bacardi has is its substantive interest in the registered mark. And of course, once we look at it through that lens, it becomes crystal clear that the way for a third party to vindicate their substantive interest in the validity of a trademark registration is cancellation procedures. And if I could just list out some of the statutory provisions that I think provide both the express text and the structure that show that there is preclusion here. If we take a look at 1063, that's the provision governing opposition proceedings, which lays out for a third party in Bacardi's shoes, before the registration is ever actually put on the books, a third party like Bacardi has an opportunity to challenge and oppose that registration. 1064 sets out the cancellation proceedings, and I think this is another very important point. 1064 not only lists out the grounds that can be raised within five years after the registration of the mark, but it expressly limits what grounds can be raised with respect to a registration after five years. And I think that is very important because it shows congressional intent to limit the challenges that can be raised with respect to a registration. And this gets back to the earlier point in terms of this not being some sort of lawless, unreviewable area. Congress expressly stated that one of the grounds that can be raised at any time, one of the timeless grounds is that the registration has been procured through fraud. And as we've cited in the Bose case from the Federal Circuit, which in a turn cites, if you click through all the Westlaw links, it goes back to decades. This is something the PTO told Bacardi in its inter partes proceedings when it was before the agency. A claim that a registration has been procured or renewed through fraud is reviewable. But what about reviewing the agency's, you know, calculation of the timing, right? Where's the provision to review this action? And I think that's actually the point, that there is none. My question is because you say this is not as though it's a lawless zone, that's the fraud, right, has to do with reviewing, again, what the trademark owner's doing. The trademark owner's committing a fraud. But what's the response to the argument that it's, there's no provision for ensuring that the agency is not behaving lawlessly? I think the response, Judge Rushing, is that's congressional design. That Congress knew what it was doing and it did it intentionally. So this is a lawless zone, but it's intentional. Congress meant to leave it to the agency. Well, I suppose, I think the response would be registration renewals are not completely unreviewable because, of course, arguments over fraud. Anything the agency does with respect to those renewals is unreviewable. I'm not sure. I don't think that would necessarily be correct. And the reason I say that is because I think if an agency, if an examiner finds, for example, let's say that there has been a registered mark and there's a finding. Well, it has not become generic or the argument is it hasn't been abandoned. Those determinations, of course, can be reviewed. And it would be reviewed through agency review. You would go up to the director first and then a district court. Is that the basis for a renewal, though? You're talking about something different, right? That's the basis for a cancellation. Right. But I think also the question of. . . Richardson's asking about a renewal. Right. And I think with renewals, though, the important point is in terms of the agency process, what we're talking about here is simply the collection of a fee. That's it. And I think not even Bacardi argues that all fee collections should be subject to an APA action. Well, you're right. That's true. It's just the collection of the fee. But if you're wrong, like there's some timing issues that they've got to do, too, right? They've got to collect the fee in the right time frame. Right? It's not just the collection of the fee. Right? This seems like to me that's the whole point. I think to clarify, Judge Richardson, they have to collect a fee. And, of course, the application has to be filed within six months. It's called the grace period. So you get the ten-year window, and you have six months after the ten years in order to file the application. But as the statute makes clear, and this is actually an amendment in 1998 to the statute, so all the cases that my friend cited saying, well, these are requirements that are not waivable, they're talking about something else. And, of course, they predate the amendments to the statute in 1998, which say that deficiencies can be cured after the statutory deadline. So what happens is you have to file the application, and then the question is, did you cure the deficiency within the time prescribed by the agency? And I think here we take a look at the regulations. And Bacardi's theory, I believe, has shifted a little bit. It's evolved throughout this litigation. But as I understand it now, it was the deficiency had to be corrected within the amount of time that you had to respond to the initial office action, and they cite 37 CFR 2.184. But that's not the right reg. The right reg is actually 185. And then even then, if that's Bacardi's theory, the office actions and the regulations make clear, you still get another six months in which you can seek review and file a petition with the director. And I think, actually, if we took Bacardi's theory here to its logical conclusion, it would actually mean that registrations would have to expire before the director even has an opportunity to look at the grounds originally cited for a refused application. So that doesn't make sense. And I think that getting back, Bacardi's theory here really makes a hash out of the comprehensive statutory scheme that Congress set up. I just want to make sure I'm understanding. That argument that you just made is assuming we reach the merits. Right. That doesn't have any impact on the question we have, because we're not, I don't believe, going to answer that question whatever we decide today. That is a question that either is reviewable, and a court gets to determine if you're right or wrong, or it's non-reviewable, and it doesn't matter what the agency does. The agency could be the one making hash of these regulations, or Bacardi could be, but your point is it makes no difference. We don't get, the courts don't get to look at whether hash is being made or an omelet. Bracketing the APA, I think that point is certainly relevant for their ultra-virus claim, because one of the obligations Bacardi has to establish subject matter jurisdiction is that there was a violation of a clear statutory mandate. All right, but we're talking about the APA. On the APA, all of that is, the argument you're making, you're saying we cannot actually look at that. That that is beyond the APA's coverage. If instead of your version, the agency acted arbitrarily with no reasoning, and just threw darts at a board to figure out how it worked, it makes no difference. They can do that. Well, I think under that hypothetical, that might raise a separate question outside of the APA on what sort of review might be available. I don't think that's the argument here. Well, no, but you said they're making hash of it. I suspect he thinks you're making hash of it. That's what courts do is they resolve whether the agency's making hash or they're making hash. And what you're saying is you agree somebody's making hash, but you don't want a court to decide it. You want your agency's decision to be final, and in this context, unreviewable. I want to back up and make two clarifications. One, I don't think the agency under any circumstances made any hash, just to bracket that. But I think going back to the APA question. That's not shocking, right? You're saying somebody's making hash, right? You say it's them. They say it's you. That's what litigation is, right? I don't know whether they're making hash or not. My point is if they are hypothetically making hash, it matters not. Well, I think because of the question of fee collection, it's just outside the scope of what Congress intended to be grounds raised to challenge a registration that's currently on the books, grounds brought by third parties who want to remove the registration from off the books. And I think I want to get to that. What you're saying is there are, I mean, you just said there are these regulations and they require these actions, and your opponent is getting those wrong. Well, that means that there are regulations that require something, right? And the agency is either complying with those or not, right? And that strikes me as the very type of thing that is reviewable. No, and I think this is the core point here. In terms of the claim Bacardi wants to bring and the remedy they are seeking, they want a registration that has been renewed, it's currently on the principal register, they want it taken off the books. To do that, a district court or the remedy they have to get is cancellation. That's really the only way. What if they were able to get the court to move quickly enough to decide this before the director granted the renewal? What if the application was timely but the payment wasn't made and they were able to somehow get a district court to rule quickly enough before the director renewed it? So I guess it's still on the books because you're waiting for a renewal from an existing registration, but maybe it's in a gray zone. Would that change your answer? I want to make sure I understand the hypothetical correctly. I think in that circumstance there might be some problems with administrative exhaustion because if the director hasn't reviewed the underlying petition. My point is just you're relying heavily on the fact that the director already granted the renewal, but it doesn't seem that timing really has anything to do with your argument. Well, no, I think the core point here is that it's not surprising or concerning that given the comprehensive scheme here what we have, and this is true of any registration that's renewed, until there has been a decision made by the director when there's a pending petition, the registration stays on the books, and that's for good reason. But I think the core point here, we can take a look at the patent cases, Excella and Preggis. I want to emphasize that Excella actually dealt with a claim very similar to what Bacardi is raising here, that there was an untimely application. And the Federal Circuit said, as it highlights time and again, really when we have a comprehensive review scheme that vindicates your substantive interests, either in the validity of a patent in that context or here the validity of a trademark registration, that shows congressional intent. And I want to get back to I believe it was Judge Richardson's question on whether there's a role or we're looking at just agency action. Congress was well aware of this because in 2020 when it amended the Lanham Act to the Trademark Modernization Act, it expressly noted that there was, before that amendment, no formal process in which there could be ex parte, that is a dispute raised by a third party and litigated directly in front of the PTO without including the registrant themselves. There was no ex parte process before then. So then Congress went in and it defined specific grounds that can be brought at specific times, in particular time windows, and when a third party can challenge the grant of a registration. And I think that indicates Congress was well aware that there was no other proceeding outside of the cancellation inter partes proceeding. One other question before you finish. So your argument in parts turns on this distinction or finds important this distinction about the fact that the remedy would be the same, even though the review is of different things, the remedy is the same. One might read the Supreme Court's decision in Hawks, which is dealing with the Clean Water Act, or Clean Air Act, one of the two, Clean Water Act, and there were two issues being reviewed. And the court there said that the fact that the remedy was the same, no coverage by the Clean Water Act, doesn't mean that there was review. Do you disagree with that reading of Hawks? I mean, it seems to undermine your reliance on the remedy being the same or similar. I think it's the remedy and the particular thing that's being challenged. And here it truly is the interest that Bacardi has is the substantive interest. But you agree that the remedy alone doesn't get you there. Hawks tells us looking at the remedy, it doesn't get us far enough for preclusion purposes. Well, for 704 and the APA, I think that might be a slightly different argument. It is certainly relevant. It is an indicator that there was preclusion. And I recognize I'm about to go over time, of course. You can always answer the question. I think here, in terms of the Supreme Court, the really relevant cases here are the Blockery, North Dakota case and the Match case. And I think there the distinction drawn in the Supreme Court case law in those two cases is really what we have here. Because in Match, both cases dealt with the Quiet Title Act. And the distinction there is if you were bringing the type of claim that Congress envisioned you to bring through these proceedings. So, for example, if you were seeking the Quiet Title, then you've got to go through the comprehensive scheme that Congress set up. But if you're raising a different type of claim altogether, then you don't. And I think here, if we take a look, and this really goes back to the district court's insight, the basis for Article III standing here, the interest that Bacardi actually has, it's not in policing the USPTO's fee collections in a collateral posture. It's its own interest in the mark. And that is the premise of a cancellation action. And certainly its arguments regarding the renewal of this same mark, they're going forward in the pending parallel proceedings in the District of Columbia. Thank you, Counsel. Thank you. We'd ask that the Court affirm. You've got a few minutes, Counsel. Thank you, Your Honor. I have four points that I would like to make with the rest of my time. First, a suggestion was made that if you look at the prayer for relief, Bacardi is asking for something that looks exactly like cancellation. Respectfully, that's really not the case. This is an APA action. We are seeking to set aside an agency action taken in January of 2016, the granted and administrative petition to renew a trademark registration that, in our view, had already expired by operation of law. If that is set aside, as we ask the Court to do under the APA, the PTO has a nondiscretionary ministerial obligation to update the registry. And I'm really surprised to hear the PTO say that the only way that that can be done is through cancellation. We have in the record a joint appendix, I believe it's 36 and 37, a memorandum that's quite comprehensive and sound from the Commissioner of Trademarks explaining exactly how this works, explaining that cancellation and expiration are different, explaining that when a trademark registration expires by operation of law, the legal status of the registration changes automatically. It just happens no cancellation is necessary, and there's simply a nondiscretionary ministerial obligation on the PTO to clean up the registry. I took his point, maybe uncharitably, but I took his point to be that, well, if it's got the same effect, then it must be the same thing. Yeah, I think that I understand the point the same way. The PTO has recognized, the statute and regulations recognize that these are different legal actions. A cancellation as a matter of law changes the legal status of a registration. That is not what we're asking for here. Once the unlawful agency action is set aside, then the trademark registration has simply expired. I'm sorry. Excuse me. Maybe I'm misunderstanding your argument. Is there a court that has treated the registration renewal challenge as a distinct action? No, Your Honor. This goes back to my response to your earlier question. I recognize that this just doesn't come up. The PTO usually follows the law, but when this comes up is the cases that we rely on where someone is dissatisfied that the PTO was a little bit too strict and really enforced the letter of these requirements. So I don't have a case one way or the other. I thought that's what you said, but then I thought what you were saying later was putting that in some shade. Sure. No, I think we're just in an area where we've got to apply first principles, chiefly the presumption favoring review. I'm running low on time, but if I can quickly tick through my last points. I heard this point, there's no mandatory obligation on the agency to do this. Again, that goes to the merits. I think Judge Richardson, I take your point that that's what we're trying to argue about is who's making a hash of the statute and the regs, and we think that this should go back to the district court to have an opportunity to do that. I will say, again, when you read the memorandum from the commissioner from 2012, when you read the trademark handbook that talks about the fee is a statutory element of the registration, these deadlines are non-waivable, non-extendable. I do think we're in the right here, but we want to go back in the district court and fight about it. This idea of Bacardi has no legitimate interest, I also have a hard time understanding. Trademark registrations are zero-sum. Either the Cubans have it or Bacardi has it, and Bacardi was told by the PTO, we can't act. We can't go forward with your application for the exact same mark because someone is standing in the way. So, of course, there's Article III injury here when the agency, that registration that is blocking it is getting in the way. By operation of law, it was supposed to expire. PTO acted unlawfully, arbitrarily, and capriciously in a way that kept that obstacle in the way. Of course, Bacardi has an interest, and the whole point of this statute is to keep the registry clean, and Bacardi is very much part of that. I see my time is up, so I'll add a fourth point. Give us the fourth one quick. Sure. It was just to respond to Judge Rushing's point about the high level of abstraction, and I do agree that at some level you can kind of define everything as basically the same. It all looks like questions about the registration of a trademark. Once you climb up that ladder, I think you really are devaluing the presumption favoring review. The real question here is this specific action, what we claim to be an unlawful renewal, is that, you know, is that renewal reviewable at all? The PTO says it's not. We say it is, and I think that the answer that it is is the only answer that's consistent with the broad sweep of the Supreme Court's cases on the strong presumption favoring review. Thank you. Thank you, counsel. We are pleased that we are now able for the first time in many, many months to come down and greet counsel, so we'll do just that.
judges: Julius N. Richardson, Allison J. Rushing, Diana Gribbon Motz